UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICE GLASS, LLC, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| vs. | ) |
| | ) |
| COLL FINANCIAL HOLDINGS, LLC | ) |
| d/b/a C2 FIBERS, LLC, RENEE COLL, | ) |
| and BRIAN COLL, | )   Case No. 4:18-CV-01835-NCC |
| | ) |
| Defendants/Counterclaim Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| EVERTRAK LLC f/k/a NICE RAIL | ) |
| PRODUCTS, LLC, VOESTALPINE | ) |
| NORTRAK, INC., QRS GROUP LLC, | ) |
| RE-POLY, LLC, TIMOTHY R. NOONAN, | ) |
| and MATTHEW B. MOORE, | ) |
| | ) |
| Counterclaim Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff and Counterclaim Defendant NICE Glass, LLC and Counterclaim Defendants Evertrak LLC f/k/a NICE Rail Products, LLC, QRS Plastics LLC, Re-Poly, LLC, Timothy R. Noonan, and Matthew B. Moore's Motion for Protective Order (Doc. 78). The Motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 49). For the following reasons, the Counterclaim Defendants' Motion with be **GRANTED, in part** and **DENIED, in part**.

## I. Background

On September 7, 2018, Plaintiff NICE Glass, LLC ("NICE Glass") filed a petition against Defendants Coll Financial Holdings, LLC d/b/a/ C2 Fibers, LLC ("C2 Fibers"), Brian Cole ("Mr. Coll"), and Renee Coll (collectively "the Colls") (all collectively the "Coll Defendants") in the Circuit Court of St. Louis County, Missouri (Doc. 4). The Coll Defendants timely removed the action to this Court on October 26, 2018 on the basis of diversity jurisdiction (Doc. 1). On November 19, 2018, NICE Glass filed its First Amended Complaint against the Coll Defendants for Breach of Contract (Count I) and Declaratory Judgment (Count II) (Doc. 12).

On February 19, 2019, the Coll Defendants[1] filed a counterclaim against NICE Glass, Evertrak LLC f/k/a NICE Rail Products, LLC ("Evertrak"), Timothy R. Noonan ("Noonan"), Matthew B. Moore ("Moore"), QRS Plastics LLC f/k/a QRS Products, LLC[2] ("QRS"), Re-Poly, LLC ("Re-Poly"), and voestalpine Nortrak, Inc ("Nortrak") (all collectively the "Counterclaim Defendants") for Breach of Contract against NICE Glass (Count I), Anticipatory Breach of Contract against NICE Glass (Count II), Tortious Interference with Contract against Nortrak (Count III), Tortious Interference with Contract against Evertrak, Noonan, Moore, Re-Poly, and QRS (Count IV), Unjust Enrichment/Quantum Meruit against all seven Counterclaim Defendants (Count V), and Civil Conspiracy against all seven Counterclaim Defendants (Count VI) (Doc. 26).

The general and relevant allegations are as follows. C2 Fibers invented a process for converting glass waste into structural reinforced plastics (the "Invention") for use in the

---

[1] Although C2 Fibers, B. Coll and R. Coll are also Counterclaim Plaintiffs, the Court will continue to refer to them collectively as the Coll Defendants.

[2] As noted by the Counterclaim Defendants, QRS Plastics LCC is now known as QRS Group LLC (*See* Doc. 80 at 1 n.1). The Court will direct the Clerk of Court to update the docket accordingly.

manufacture, sale and distribution of products used in the composite reinforcement industry, including railroad ties (the "Business"). Nortrak expressed interest in buying or investing in C2 Fibers. Ultimately, Nortrak did not purchase C2 Fibers. Instead, in May 2017, Nortrak and C2 Fibers executed an exclusive distribution and supply agreement ("Nortrak Contract") that would include an option for Nortrak to purchase at least 51% of C2 Fibers. On June 16, 2017, NICE Glass and the Coll Defendants entered into an Asset Purchase Agreement ("APA") for the purchase of assets from C2 Fibers (the "Purchased Assets") including – the Invention and all of the Coll Defendants' intellectual property relating to the Invention. NICE Glass also purchased the Owens Corning Contract dated May 8, 2017 and the Nortrak Contract. The APA requires NICE Glass to pay the Colls a series of royalty payments.

NICE Glass alleges that the Coll Defendants have breached the APA and that it is entitled to compensatory damages for the breach and relief from its obligation to pay any royalty payments. Alternatively, NICE Glass seeks rescission of the APA and the other Agreements and restitution of all amounts paid. The Coll Defendants conversely assert that NICE Glass has breached the APA and that the remaining Counterclaim Defendants interfered with the APA. Specifically, the Coll Defendants allege that the other Counterclaim Defendants partnered with Counterclaim Defendant Evertrak to design, manufacture, market, and sell the composite railroad ties using the intellectual property and technology of C2 Fibers. The Court denied competing motions to dismiss on July 30, 2019.

The Court held a Rule 16 Conference and issued a Case Management Order July 31, 2019 (Docs. 67, 68). On January 24, 2020, pursuant to the CMO, the Court issued an order referring this action to alternative dispute resolution (Doc. 73). The parties subsequently filed a memorandum to the clerk indicating that mediation would not currently be productive (Doc. 75). The Court set this matter for a telephone conference (Doc. 76). One day prior to the telephone

conference, on February 26, 2020, the Counterclaim Defendants filed a Motion for Protective Order (Doc. 78). While the parties have largely agreed to the terms of the Protective Order, they dispute sections 8.b.i, 8.b.ii, 9, and 10 (Doc. 78-1).

## II. Analysis

Federal Rule of Civil Procedure 26(c) provides that a party may move for a protective order in the court where the action is pending and the court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The burden is therefore upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gen Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (internal quotation marks omitted). Rule 26(c) confers "broad discretion on the [district] court to decide . . . what degree of protection is required." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (internal quotations omitted). "Courts routinely grant protective orders that limit access to sensitive or proprietary information." *Hobbs v. Employers Mut. Cas. Co.*, No. 5:17-CV-05040-JLV, 2018 WL 324867, at *2 (D.S.D. Jan. 8, 2018).

**A. Sections 8.b.i and 8.b.ii**

First, the parties dispute the extent to which "Highly Confidential" material should be available. "Highly Confidential" material is:

> **"Highly Confidential"** if it contains information that the Producing Party reasonably believes in good faith not to be in the public domain and the designated matter contains or constitutes [sic] (i) contains highly sensitive commercial or proprietary information or trade secrets, highly protected design reports, manufacturing reports, and technology secrets; (ii) contains highly sensitive personal information, financial, medical or psychiatric information that is subject to the privacy interest of any individual; or (iii) is subject to an express obligation of confidentiality owed by the Producing Party to a third party.

4

(Doc. 78-1 at 2-3) (emphasis in original). As proposed, section 8 limits who may view "Highly Confidential" materials to a single representative of each of the three party groups (the Coll Defendants, Nortrak, and the remaining Counterclaim Defendants). The parties agree that Brian Coll can be the designated representative of the Coll Defendants. There also does not appear to be a dispute regarding whether Mr. Coll shall be required to sign a confidentiality agreement in line with the final language of the Protective Order. Section 8.b.i, as proposed by the Counterclaim Defendants, however, would limit the nature of the single representative's access to the material such that he or she could not (1) keep a copy; (2) view the material outside the direct supervision of counsel; (3) take notes concerning the content; (4) discuss or disclose the contents with or to other employees or third parties unless these third parties are technical advisors; and (5) use the materials for any purpose other than in connection with the prosecution or defense of the current action (Doc. 78-1 at 7).

The Counterclaim Defendants argue that this language is necessary in order to protect the trade secrets and business plans of NICE Glass in light of NICE Glass's requested relief, rescission, and Mr. Coll's status as a potential competitor. As it relates to Nortrak, the Counterclaim Defendants assert that Nortrak has existing and prospective business relationships with several parties and that the disclosure of sensitive business information would give those parties an unfair advantage in current and future negotiations with Nortrak and, if shared with certain parties in this litigation, would have an anticompetitive effect and harm Nortrak's competitive advantage in the marketplace.

The Coll Defendants do not dispute restrictions numbers 1, 4 and 5 but argue that the remaining limits are severely restrictive, even prejudicial. The Coll Defendants assert that Mr. Coll resides over an hour away from his counsels' offices, primarily works even further away, and travels significantly for business such that viewing the material under the direct supervision

of counsel would be unduly prejudicial to the Coll Defendants especially in light of the alternate protections in place. Specifically, the Coll Defendants note that the material would not be discussed with third parties unless such third party is a technical advisor, the material will not be used for any other purpose than in connection with the prosecution or defense of this action, the material would be returned or destroyed at the conclusion of this action, and the designated representative would be bound by the confidentiality agreement. The Coll Defendants also argue that information regarding NICE Glass' current method of making railroad ties is directly relevant to the current claims considering NICE Glass' claim that the Invention does not work and it is not using any of the Invention or related technology. The Coll Defendants assert that the Nortrak disclosures are similarly relevant in light of the Coll Defendants' claims that the Counterclaim Defendants are collectively using the information bought from the Coll Parties to operate their collective businesses.

The Counterclaim Defendants reply that an hour drive is a minimal burden in light of Mr. Coll's competitive position with several of the Counterclaim Defendants. The Counterclaim Defendants further note that Nortrak's representative does not reside in the same state as Nortrak's outside counsel. Additionally, the Counterclaim Defendants argue that even if Mr. Coll is required to return copies of the "Highly Confidential" material after litigation, he will have had the opportunity to fully internalize what the trade secrets are because he will be permitted unrestricted access to those materials and the ability to take notes about those materials during the pendency of the litigation.

The Court will deny the Counterclaim Defendants' Motion as to sections 8.b.i and 8.b.ii. The parties concur that Brian Coll will be the Coll Defendants' designated representative and thus permitted to review "Highly Confidential" material. The restrictions at issue, taking notes and reviewing the material in the presence of counsel, appear to disproportionately impact Mr.

Coll. Additionally, Mr. Coll will be constricted by other agreements, including a confidentiality agreement prescribed by the Protective Order. The Court notes that named parties are traditionally afforded access to otherwise confidential materials during pending litigation. The Counterclaim Defendants have failed to show good cause warrants these additional restrictions.

**B. Section 9**

Next, the parties disagree regarding the procedure for disclosing "Highly Confidential" material to outside consultants, technical advisors, and expert witnesses. The Counterclaim Defendants propose that section 9 require a party to identify any such consultants, advisors, and witnesses and for the producing party to approve the individual before disclosure of any "Highly Confidential" material is allowed. If there is a dispute, section 9 further provides for Court resolution, if necessary, after the parties meet and confer.

The Counterclaim Defendants indicate that their primary concern is that these outside consultants, technical advisors, and expert witnesses be "*bona fide*." Thus, the Counterclaim Defendants hope to prevent an "end run" around the intent of the protections in section 8. Conversely, the Coll Defendants assert that the provision is unduly burdensome as it would hamper their ability to timely prosecute their case, grant Counterclaim Defendants a veto, and prevent the Coll Defendants from selecting the expert or consultant of their choice. The Coll Defendants further assert that the Counterclaim Defendants have other vehicles to object to the Coll Defendants' selection of experts including depositions, discovery, and motion practice. They argue that a more practical method moving forward is to place the burden on the objecting party to file a Motion to prevent access to "Highly Confidential" materials. In their reply, Counterclaim Defendants assert that some protection is warranted to ensure that "Highly Confidential" material is not disclosed to third parties who are otherwise not "*bona fide*" experts or advisors. To that end, the Counterclaim Defendants would agree to shift the burden to the

objecting party so long as no "Highly Confidential" materials are disclosed before a resolution or court determination is reached.

The Court will grant, in part and deny, in part the Counterclaim Defendants' Motion as to section 9. Absent any protections, the technical advisor provision would provide an avenue for potential misconduct. Thus, the parties shall exchange lists of their advisors in accordance with section 9(a). Further, these individuals shall execute the non-disclosure agreement attached as Exhibit B to the Protective Order. If a dispute arises, the parties shall meet and confer in person or by telephone prior to raising the objection before the Court. Any objections shall be raised by the objecting party and shall be limited to the issue of whether the individual is indeed "participating in or providing reasonably necessary services for the prosecution or defense of this matter." Any other objections are properly handled by other vehicles, as noted by the Coll Defendants. Specifically, the Court will not entertain *Daubert*-adjacent motions during this process. The "Highly Confidential" materials shall not be disclosed until a resolution regarding the matter is reached.

**C. Section 10**

Finally, the parties dispute the necessity of including section 10, regarding disclosures from Counterclaim Defendant Nortrak, in the Protective Order. In section 10, the Counterclaim Defendants, including Nortrak, propose the following language:

> Any Nortrak documents that both (1) are internal to Nortrak and have never been disclosed or disseminated outside Nortrak and (2) reflect Nortrak business plans and strategy, modeling of financial data, business valuations, financial projections, and related competitively sensitive proprietary data are not relevant to the claims, counterclaims, or defenses in this case, and therefore need not be produced, will not be requested, and will not be produced by Nortrak in this case  To the extent such information may be found in documents that also include discoverable information, Nortrak shall produce such documents with redactions for its wholly internal and competitively sensitive proprietary data.

The Counterclaim Defendants assert that this section is necessary to shield from discovery certain highly protected, competitively sensitive information in Nortrak's possession. The Counterclaim Defendants further assert that "Nortrak is a wholly unwilling participant in this litigation" and that the information is not relevant to the claims but instead, its disclosure would be prejudicial to Nortrak (Doc. 78 at 7). In the alternative, Nortrak offers to produce this material subject to an "Attorneys' Eyes Only" designation.

The Coll Defendants seek removal of this section, arguing that it is unreasonable to exclude all discovery regarding these internal documents and communications. Regardless, the Coll Defendants argue, any proprietary material would be covered by the definition under section 2 for "Highly Confidential" material. The Coll Defendants similarly assert that an "attorneys' eyes only" designation is illusory as Brian Coll's review of any material is paramount to the Coll Defendants' case. Further, Brian Coll has agreed to be bound by a confidentiality agreement under the Protective Order and he is also already bound by non-compete agreements with NICE Glass and Nortrak.

In their reply, the Counterclaim Defendants apparently abandon their position that these documents shall not be produced. Instead, the Counterclaim Defendant argue that Nortrak will produce these materials only with restrictions that prevent the parties themselves from reviewing these documents because Nortrak would be unduly prejudiced as it is in a business relationship with multiple parties in this case.

"Upon a showing by the requesting party that the discovery is relevant, the burden is on the party resisting discovery to explain why discovery should be limited." *Dapron v Spire, Inc.*, 329 F.R.D. 223, 227 (E.D. Mo. Jan. 9, 2019) (citing *CitiMortgage, Inc. v. Allied Mortg. Group, Inc.*, 2012 WL 1554908, at *2 (E.D. Mo. May 1, 2012)). "The party must demonstrate that requested discovery does "not come within the broad scope of relevance defined pursuant to

Rule 26(b)(1)." *Dapron*, 329 F.R.D. at 227 (citing *Jo Ann Howard & Assocs. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. Nov. 19, 2014)). "However, although the standard of relevance in the context of discovery may be broader than in the context of [admissibility], 'this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery.'" *Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt.*, 2012 WL 1620506, at *3 (E.D. Mo. May 9, 2012) (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)).

The Court will deny the Counterclaim Defendants' Motion as to section 10. The Counterclaim Defendants, and Nortrak specifically, have failed to meet their burden to establish that this material would not be relevant to the counterclaims or their defenses such that a wholesale ban on disclosure would be warranted. The Counterclaim Defendants' assertion that Nortrak is an "unwilling participant" is unavailing as most defendants are in court unwillingly. Furthermore, the protections afforded "Highly Confidential" material provide significant safeguards to the relevant items that fall into this category. The Court is mindful that the parties in this action are significantly intertwined and, in some cases competitors. The nature of the claims are such that technical expertise may be warranted. Nortrak retains its ability to object to any request for production under the Federal Rules of Civil Procedure and to designate materials as "Highly Confidential."

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff and Counterclaim Defendant NICE Glass, LLC and Counterclaim Defendants Evertrak LLC f/k/a NICE Rail Products, LLC, QRS Group LLC, Re-Poly, LLC, Timothy R. Noonan, and Matthew B. Moore's Motion for Protective Order (Doc. 78) is **GRANTED, in part** and **DENIED, in part**.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to update the docket to reflect that QRS Plastics LLC is now known as QRS Group LLC.

Dated this 10th day of April, 2020.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE